UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STACEY CUELLO,

                    Plaintiff,

                -v-

TARGET CORPORATION,

                    Defendant.

---

22 Civ. 2013 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This case involves a tray that fell on a shopper's head, causing injury. On April 6, 2021, plaintiff Stacey Cuello ("Cuello") was shopping in the home goods aisle at a Target Corporation ("Target") store in the Bronx. Dkt. 27 ("JSF") ¶¶ 1, 2, 6. She reached above her head to retrieve a two-foot-tall wicker basket that sat on a high shelf. Atop the basket sat a heavy tray, which had been placed there by an unknown person.[1] *Id.* ¶ 11. As Cuello retrieved the basket, the tray slid off and struck her in the face under her left eye. Dkt. 29-4 ("Cuello Depo. Tr.") at 21. Approximately five months later, Cuello sued Target for negligence, claiming that Target had had constructive notice of the tray because, had it fulfilled its duty to reasonably inspect the premises, it would have discovered and removed the plate. Dkt. 1 at 5–6.

Before the Court is Target's motion for summary judgment. Dkt. 28. Target argues that Cuello has failed to adduce evidence sufficient to establish that Target created or had actual or constructive notice of the hazard—the dangerously situated tray. Dkt. 30 at 1 ("Mot."). Cuello concedes that Target did not create or have actual notice of the hazard. But, she argues, a

---

[1] The parties interchangeably use "tray" and "plate" to describe the item that hit Cuello in the face.

factfinder could infer, based on video evidence and deposition testimony from Cuello and store employees, that Target had had constructive notice of the hazard based on the amount of time the tray had been in its hazardous position and Target's failure to reasonably inspect the aisle's shelves in the period immediately before the incident. Dkt. 32 ("Opp.") at 1, 12. For the following reasons, the Court denies Target's motion for summary judgment.

## I.    Background

### A.    Factual Background[2]

#### 1.    The Incident

On April 6, 2021, Cuello was shopping at the Target store at 700 Exterior Street in the Bronx. JSF ¶¶ 1–2. Approximately 15 minutes into her shopping, at 7:49 p.m., Cuello was in aisle 31 of the home goods department, when she reached above her head in an attempt to take a two-foot-tall wicker basket off a shelf. *Id.* ¶¶ 2, 6, 10; *see* Contreras Depo. Tr. at 29. Cuello is approximately 5'2" tall and testified that the wicker basket was on a shelf approximately 5'7" above the floor. JSF ¶ 7. As she reached above, she noticed that there was a tray atop the basket, but she was unable to determine whether the tray was attached. *Id.* ¶¶ 11–12. *But see id.* ¶¶ 5, 13 (Cuello stating, on the night of the incident, to Target team member Marcelo Contreras ("Contreras"), that she believed the wicker basket and the tray were connected as a single item). As she pulled the wicker basket off the shelf—which she did by grabbing the basket in the

---

[2] The Court draws these facts from the JSF and the parties' submissions, including, in support of Target's motion, Target's memorandum of law, Dkt. 30 ("Mot."); the deposition transcripts of Cuello, Dkt. 29-4, Amauri Gonzalez, Dkt. 29-5 ("Gonzalez Depo. Tr."), Helson Santiago, Dkt. 29-7 ("Santiago Depo. Tr."), and Marcelo Contreras, Dkt. 29-8 ("Contreras Depo. Tr."); the Leader on Duty Investigation Report ("LOD Investigation Report"), Dkt. 29-6; and Target's reply, Dkt. 33 ("Reply"); and, in opposition to Target's motion, Cuello's memorandum of law, Dkt. 32 ("Opp.").

middle—the tray slid off and hit her in the face under her left eye. *Id.* ¶ 15; Cuello Depo. Tr. at 21.

Although there were other wicker baskets displayed in the same shelving area, there were no other trays in the area.   JSF ¶¶ 8–9.  Target team member Amauri Gonzalez ("Gonzalez")—Target's "closing team leader" who was on duty the night of the incident—testified that the tray did not belong on the wicker basket, that Target had not intentionally displayed it there, and that had he seen the tray atop the basket, he would have moved it and would have expected his staff to do the same. *Id.* ¶¶ 3, 16–17.  Cuello testified that she did not know how the tray got on top of the wicker basket or how long it had been there. *Id.* ¶ 14; Cuello Depo. Tr. at 19–20.

Neither party is aware of any witnesses to the incident apart from Cuello.  JSF ¶ 35.

### 2.    Target's Procedures and the Night of the Incident

Gonzalez testified that all Target team members in the store are expected to consistently help guests and maintain the aisles. *Id.* ¶ 18; Gonzalez Depo. Tr. at 11–12.  In maintaining the aisles, Target team members are expected to collect "foreigns," or items found in the wrong department.  JSF ¶ 19.  Gonzalez and Helson Santiago ("Santiago"), a Target closing expert who was working the night of the incident, testified that Target's closing team members look for foreigns throughout their shifts, beginning when they are assigned to their department for the day. *Id.* ¶ 20; *see* Gonzalez Depo. Tr. at 14–15; Santiago Depo. Tr. at 31–32.  Gonzalez testified that, though there are no set times for aisle inspections, team members should look through each aisle to search for foreigns every 45 minutes to an hour.  Gonzalez Depo. Tr. at 16.

Although Gonzalez could not recall exactly how many team members were working at the store between 7 p.m. and midnight—the evening shift—he estimated that, in April 2021, the Target closing team consisted of five or six people. *Id.* at 18–20.  Santiago estimated that there

would have been seven or eight Target closing team members on duty on an evening shift in April 2021. Santiago Depo. Tr. at 13.

On the night of the incident, the home goods department was assigned to closing team member Jessenia Sanchez-Perez ("Sanchez-Perez"). JSF ¶ 21. As part of her duties, Sanchez-Perez was expected to look for foreigns. *Id.* The LOD Investigation Report—a one-page post-incident report prepared by team leader Gonzalez—states that Sanchez-Perez was the team member "most recently through the area prior to the incident" and that Sanchez-Perez and Jamillah Walters ("Walters")[3] were the team members who had been in the "area within 30 minutes prior to the incident." Dkt. 29-6. Neither gave deposition testimony in this case, however, and Gonzalez testified that he had not spoken with Sanchez-Perez about the incident and did not actually know whether Sanchez-Perez or Walters had been in (or inspected) the area in the 30 minutes before the incident. Gonzalez Depo. Tr. at 48, 72, 108–11. Rather, Gonzalez testified, he prepared the LOD Investigation Report based on his assumptions drawn from the assignments of personnel to the area. *Id.* at 109–11.

### 3.    Video Footage of the Incident

Target has produced video surveillance footage capturing approximately 30 minutes before and after the incident. JSF ¶ 23. Contreras—the Target team member who retained the video footage on the night of the incident—testified that this footage was captured by the closest camera to the scene of the incident, that such was the only camera in the department, and that it was the only camera from which footage was retained. *Id.* ¶¶ 5, 24; Contreras Depo. Tr. at 6–8, 36–37, 43. Contreras had been trained that in the event of an accident, he was to preserve footage 30 minutes before and after the accident. JSF ¶ 25.

---

[3] The parties alternatively refer to Walters as "Jamelia" and as "Walkers."

The video footage, which is from a substantial distance, depicts the back wall and several perpendicular aisles that are part of the home goods section. *Id.* ¶ 27; *see* Contreras Depo. Tr. at 31–32; Gonzalez Depo. Tr. at 34–35. The incident appears in the top left corner of the video footage. JSF ¶¶ 27, 34. The parties agree that the video footage shows that within the approximately 13 minutes before the incident, there are five instances in which people were in the same general vicinity where the incident soon occurred. *Id.* ¶¶ 28–32 (referring to timestamps 25:37, 26:50, 29:50, 33:10, and 35:25). At timestamp 38:30, Cuello can be seen for the first time, pushing a cart through the aisle. *Id.* ¶ 33. The incident occurred at timestamp 38:45 of the video footage. *Id.* ¶ 34.

**B.     Procedural History**

On September 2, 2021, Cuello filed a Summons and Complaint in New York State Supreme Court in the Bronx. Dkt. 1 at 4–11. On November 4, 2021, Target answered. *Id.* at 12–19. On March 10, 2022, Target removed the case to this Court, based on diversity jurisdiction. *Id.* at 1.

On April 13, 2022, the Court held an initial conference, and, the following day, issued a case management plan and scheduling order. Dkt. 17. On July 28, 2022, both parties moved by letter for an extension of time to complete discovery, Dkt. 18, and the Court granted the motion. Dkt. 19. On October 6, 2022, Target requested an extension to complete discovery, Dkt. 20, and, on October 11, 2022, the Court granted the extension, Dkt. 21.

On February 10, 2023, the Court held a conference and set a briefing schedule for Target's motion for summary judgment. Dkt. 26. On March 6, 2023, the parties filed the JSF. Dkt. 27. On March 13, 2023, Target moved for summary judgment. Dkts. 28–30. On April 11, 2023, Cuello opposed the motion. Dkts. 31–32. On April 25, 2023, Target replied. Dkt. 33.

## II.    Discussion

### A.    Applicable Legal Standards

The Court has jurisdiction over this matter based on diversity jurisdiction. *See* 28 U.S.C.

§ 1332.  Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), the Court is to apply federal

procedural law and state substantive law.[4]  The parties agree that New York substantive law

applies. Mot. at 10; Opp. at 12.

### 1.    Summary Judgment Standard

A court is to grant summary judgment where the moving party has demonstrated "that

there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  A dispute about a material fact is "'genuine' . . . if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Whether a fact is material depends on the governing

substantive law—"[o]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." *Id.*

The movant bears the burden of demonstrating the absence of a question of material fact.

*Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986)).  The non-moving party must then "present evidence sufficient to satisfy

every element of the claim." *Id.*  The non-moving party "may not rely on mere speculation or

conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks*

*v. Baines*, 593 F.3d 15, 166 (2d Cir. 2010) (citation and internal quotation marks omitted).

---

[4] Target argues that Cuello advocates use of New York standards for evaluating summary
judgment motions.  Reply at 1.  The federal standard for such motions governs here. *See, e.g.*,
*Rodriguez v. Wal-Mart Stores E., LP*, No. 16 Civ. 2603 (CS), 2017 WL 4045745, at *2–3
(S.D.N.Y. Sept. 11, 2017); *Wilson v. Wal-Mart Stores E., LP*, No. 16 Civ. 8637 (JCM), 2018 WL
4473342, at *4 (S.D.N.Y. Sept. 18, 2018).

"[T]he court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Holcomb*, 521 F.3d at 137 (citing *Anderson*, 477 U.S. at 255).

## 2.    New York Negligence Law and Premises Liability

Under New York law, to succeed on a negligence claim, a plaintiff must establish: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of N.Y.*, 66 N.Y.2d 1026 (N.Y. 1985)).  In a premises liability case, the plaintiff must demonstrate either that "the landowner created the condition that caused the injury, or that the landowner had actual or constructive notice of the condition." *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004).  "To prove liability based on constructive notice, the danger must have been 'visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it.'" *Nussbaum v. Metro-N. Commuter R.R.*, 603 F. App'x 10, 12 (2d Cir. 2015) (quoting *Lemonda v. Sutton*, 702 N.Y.S.2d 275 (N.Y. App. Div. 2000)).  Constructive notice may also "be attributed to a defendant who had actual notice of a recurring problem in the location the accident occurred." *Tuthill v. United States*, 270 F. Supp. 2d 395, 400 (S.D.N.Y. 2003).

A plaintiff may also establish premises liability if the dangerous condition would have been discovered through a reasonable inspection, but defendant failed to conduct such an inspection.  Some courts have treated a failure to conduct a reasonable inspection as a basis to impute constructive notice.  *See, e.g.*, *St. Paul Fire & Marine Ins. v. T.A.G. 380 L.L.C.*, No. 05 Civ. 4917 (DC), 2007 WL 2872464, at *7 (S.D.N.Y. Sept. 27, 2007) ("A landowner is chargeable with constructive notice of a dangerous condition that a reasonable inspection would have discovered.").  Others have treated such a failure as an independent basis for premises

liability. *See Bogery v. United States*, No. 17 Civ. 6996 (VEC), 2018 WL 4265901, at *7

(S.D.N.Y. Sept. 6, 2019); *see also Tuthill*, 270 F. Supp. 2d at 400 ("[T]he issue of actual or

constructive notice is irrelevant where defendant had a duty to conduct reasonable inspections of

the premises and failed to do so."). Regardless, where a plaintiff cannot otherwise demonstrate

creation of a hazard, actual notice of a hazard, or constructive notice, that plaintiff may still be

able to establish premises liability where he or she can demonstrate a defendant's failure to

reasonably inspect the premises.

### B.    Analysis

Cuello concedes that Target did not create the hazard that caused her injury (the tray

situated atop the wicker basket) or have actual notice of it. Opp. at 12. As a result, only two

issues remain: whether (1) Target had constructive notice of the hazard because the hazard was

visible and apparent for a sufficient length of time before Cuello's accident to reasonably permit

Target to discover and remedy it, *see Nussbaum*, 603 F. App'x at 12, and (2) a reasonable

inspection of the property, which Target failed to perform, would have uncovered the hazardous

condition. *See St. Paul Fire & Marine Ins.*, 2007 WL 2872464, at *7.

As to each proposition, Target disputes that there is sufficient evidence to reach a jury.[5]

---

[5] A plaintiff alternatively may establish constructive notice where "a defendant . . . had actual notice of a recurring problem in the location the accident occurred." *Tuthill*, 270 F. Supp. 2d at 400. But a reasonable jury could not so find here based on the evidence adduced. Cuello notes testimony "that customers' improperly placing merchandise on shelves" was a common enough problem to lead Target to task a team with finding and removing such items. Opp. at 17–18. But Target's general awareness that customers sometimes errantly replaced goods on shelves does not establish that there was a recurring problem of merchandise being precariously placed on top of other merchandise so as to cause a falling hazard. Cuello has not adduced any evidence of prior incidents of that nature. *See Tuthill*, 270 F. Supp. 2d at 400; *cf. Chin v. Harp Marketing*, 648 N.Y.S.2d 697, 698 (App. Div. 1996) (summary judgment improper where "defendant's recent knowledge that bottles had fallen from a particular display within the store is qualitatively different from a mere 'general awareness' that a dangerous condition may be present"); *McLaughlin v. Waldbaums, Inc.*, 654 N.Y.S.2d 405, 407 (App. Div. 1997) (same).

Cuello counters that, viewing disputed issues of fact in her favor, a reasonable jury could so find. The Court holds with Cuello.

### 1.   Was the Condition Visible and Apparent for a Sufficient Length of Time?

#### a.   *Visible and Apparent*

In assessing whether a dangerous condition was "visible and apparent" in cases where video footage was available, courts in this Circuit have often looked to whether (1) the hazard was visible in the video, (2) the plaintiff noticed the hazard before the accident, and (3) there is evidence that anyone else noticed the hazard. *See, e.g.*, *Rodriguez*, 2017 WL 4045745; *Wilson*, *LP*, 2018 WL 4473342; *Decker v. Middletown Walmart Supercenter Store*, No. 15 Civ. 2886 (JCM), 2017 WL 568761 (S.D.N.Y. Feb. 10, 2017); *Watts v. Wal-Mart Stores E., LP*, No. 16 Civ. 4411 (KMK), 2018 WL 1626169, at *5 (S.D.N.Y. Mar. 29, 2018).

Cuello has adduced sufficient evidence to meet this standard here. Her own testimony is that she herself noticed the tray sitting above the wicker basket, albeit not appreciating—in the way that a Target employee presumably would have—the hazard that it presented. And Target did not seriously counter this point in pursuing summary judgment. It first addressed this point only in its reply, contending there that the tray was not visible and apparent. Reply at 10. But "it is well settled that arguments may not be raised for the first time in a reply brief as that tactic denies the plaintiff the opportunity to respond." *Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 484 n.28 (S.D.N.Y. 2003). In any event, even if Target had properly pressed this point, the term "visible and apparent" has been defined to cover hazards that—even if only latent—would have been discovered upon reasonable inspection. *See, e.g., Ferrara v. Transform KLM LLC*, No. 20 Civ. 236 (MAD) (ML), 2021 WL 3188389, at *2 (N.D.N.Y. 2021); *Jack v. Weiner*, 200 A.D.3d 762, 763 (2nd Dep't 2021). On the basis of Cuello's testimony, a

reasonable jury could find the unattached tray sitting high up atop the wicker basket to have been visible and apparent.

### b.     Length of Time

To survive summary judgment in a premises liability case, a plaintiff must also adduce evidence that the hazard was present for a sufficient period of time such that the defendant had the opportunity to discover and remedy it. *See, e.g., Watts*, 2018 WL 1626169, at *7. Courts have granted motions for summary judgment where a plaintiff could not adduce non-speculative evidence as to how long before the accident the hazard had been present. *See Rodriguez*, 2017 WL 4045745, at *5 (collecting cases).

New York case law is scattered, however, on how long the dangerous condition must have gone unnoticed. These decisions presumably reflect, *inter alia*, the varying circumstances from which such claims have arisen. Courts have found as little as five minutes sufficient for a defendant to discover and remedy the hazard; others have found as long as 50 minutes insufficient to give rise to constructive notice. *See, e.g., Deluna-Cole v. Tonali, Inc.*, 303 A.D.2d 186, 187 (1st Dep't 2003) (finding time between five and eight minutes sufficient for defendants to discover and remove broken glass); *Kelsey v. Port Authority of N. Y. & N.J.*, 52 A.D.2d 801, 801 (1st Dep't 1976) (upholding jury finding of premises liability where slippery condition that existed for 15 to 20 minutes); *Alexander v. Marriott Int'l, Inc.*, No. 01 Civ. 1124 (LMM), 2002 WL 1492125, at *3 (S.D.N.Y. July 11, 2002) (finding approximately 20-minute period between when the puddle was first observed and when plaintiff fell sufficient to raise a triable issue as to constructive notice). *But see Ascher v. Target Corp.*, 522 F. Supp. 2d 452, 462 (E.D.N.Y. 2007) (finding 10 minute period insufficient basis to find constructive notice); *Hagan v. City of New York*, 166 A.D.3d 590, 591 (2d Dep't 2018) (finding evidence that the hazard had existed no more than 20 minutes insufficient to support constructive notice, and granting summary

10

judgment to defense); *Lyman v. PetSmart, Inc.*, No. 16 Civ. 04627 (JCM), 2018 WL 4538908, at
*8 (S.D.N.Y. Sept. 21, 2018) (stating that, in general, 25 to 30 minutes is insufficient time to
give rise to a defendant's constructive notice of a hazardous condition); *Evangelista v. Church of
St. Patrick*, 960 N.Y.S.2d 97, 97 (1st Dep't 2013) (finding an inspection 50 minutes before a fall
sufficient to find a lack of constructive notice of a later arising dangerous condition, where case
did not involve any other evidence supporting inference of constructive notice).

Here, Target argues that summary judgment is warranted on this issue, on the ground that
Cuello cannot point to any evidence "to establish when and how long the tray came to be on top
of the wicker basket." Mot. at 1. It asserts that the only evidence that even potentially speaks to
when the plate came to be placed upon the basket is the video footage. And it argues that that
footage cannot non-speculatively establish that the tray had been atop the basket meaningfully
before Cuello's fateful encounter with it. On the contrary, Target notes that soon before Cuello's
accident, at timestamp 35:25, that is, about three minutes before the plate hits Cuello, "an
individual is seen approaching the same area of shelving and he or she reaches up to the top
shelf." *Id.* at 8. This, Target suggests, may have been when the tray was placed above the
basket, and if so, it notes, the hazard was in place too soon before the accident to support a
finding of constructive notice. Cuello interprets the video footage differently. She contends that
a juror closely analyzing the footage could conclude that in the 38 minutes before the incident,
no person is seen placing the tray upon the wicker basket. That includes the snippet at 35:25,
which Cuello interprets not to reveal a person putting a tray atop the basket.

Having closely examined the video, the Court's view is this question is properly left for a
finder of fact. The video, which captures from afar the site of the accident in the 38 preceding
minutes, is challenging to interpret. A jury could well find the video inconclusive as to whether

11

it captures a person placing the tray atop the wicker basket during that time span.  But the Court is unprepared to conclusively find that the video is incapable of reliable deconstruction by a jury on the point at issue.  The Court cannot rule out that conscientious jurors could reliably reach a conclusion as to whether the video—at any point during the 38 minutes preceding the accident—reveals a person putting the tray high atop the basket.

In this respect, *Chong v. Target Corporation,* No. 14 Civ. 547 (WFK) (JO), 2015 WL 2250250 (E.D.N.Y. May 12, 2015), is instructive.  The plaintiff there brought negligence claims against Target based on an in-store accident, alleging premises liability based on constructive notice.  A video showed "at least several people walk[ing] gingerly and carefully in the general area of the identified aisle where [p]laintiff fell in the thirty minutes prior to [p]laintiff's fall." *Id.* at *4 (internal quotation marks omitted).  Pursuing summary judgment, Target argued that the video showed, less than a minute before the accident, a little boy dropping something and spilling liquid on the floor.  *Id.*  The district court denied summary judgment, finding the video capable of alternative interpretations, notwithstanding that if Target's interpretation were credited and the spill found to have occurred seconds before the accident, summary judgment for Target would have been in order.  The court explained that "whether the liquid was on the floor for a significant period of time prior to [p]laintiff's fall [was] a material issue of fact that still remain[ed] to be determined by the jury." *Id.* at *5.  It was not "clear from the video," the court noted, "exactly what the little boy did" or "that the liquid was not present during the period before the little boy's arrival and all of the other patrons simply got lucky and did not step on it." *Id.* at *4.

A similar conclusion follows from the video here.  The 38 minutes of footage of the spot in the aisle where Cuello's accident occurred is distant and grainy.  But the footage is not so

blurry or unhelpful as to preclude a careful viewer from finding facts based on it. A reasonable jury, studying this footage, could reach one of at least three conclusions. The first two would involve affirmative factual findings.

First, a jury could conclude that the video affirmatively reveals that the tray was not put atop the basket at any point during this period, and therefore that the hazard had been in place unremedied for at least 38 minutes before Cuello's accident. Such would tend to support a finding of constructive notice, provided that the jury also found, as it could, that 38 minutes was long enough to give Target a reasonable opportunity to discover and remedy the hazard.

Second, and alternatively, the jury could conclude that the tray had been placed atop the basket during the video. And, because the four instances that the video depicts of persons being present in the vicinity of the eventual accident site all occur in the approximately 13 minutes before Cuello's accident, a jury that so found could reasonably find that the hazard was in place too briefly to give rise to constructive notice.

A jury that made either of these findings would do so based on its review of the several moments captured on the video at which a person potentially could have placed the tray atop the wicker basket. Cuello's accident occurs at timestamp 38:45. JSF ¶¶ 27, 34. The four points at which the video reflects persons in the immediate vicinity of the accident occur at timestamps 25:37, 26:50, 29:50, and 33:10. *Id.* ¶¶ 28–32. Target emphasizes that, at each point, several or multiple people "are seen on the video in the same general vicinity where the subject incident later occurs." *Id.* It argues that during these moments, "[i]t is difficult to distinguish one person from another . . . [or to tell] what actions are being taken by those seen in the video." Mot. at 8. But, it argues, at two points in particular, a jury could find that a person put the tray atop the basket. At the 33:10 timestamp, Target notes, "multiple people are seen facing and approaching

the shelving in question." *Id.* at 14.  And, at the 35:25 timestamp, a person can be "seen in the same general vicinity where the subject incident later happens."  JSF ¶ 32.  Target argues that "an individual is seen approaching the same area of shelving and he or she reaches up to the top shelf."  Mot. at 8.  A reasonable jury could interpret the video as Target urges, particularly as to the 35:25 timestamp, and find it more likely than not that, imminently before the accident, a person put the tray up on the shelf.  But a jury could alternatively find, on a close review, that it merely revealed people congregating in front of the shelves, but that it did not reveal anyone reaching high up and placing a tray atop a basket more than seven feet above the ground.  As noted, a jury that made the first of these factual findings could find a lack of constructive notice.  But a jury that found the second—that the video did not reflect the tray being placed atop the basket during the 38 minutes preceding the accident—could find that the tray had been in position long enough to support constructive notice.

In sum, a reasonable jury could potentially draw conclusions in either side's favor from the video.  A jury could also quite reasonably conclude that the video is simply inconclusive on this point—the third possible finding.[6]  For present purposes, however, given Target's summary judgment motion, it suffices to note that a jury could find the tray hazard to have been in place sufficiently long to support a finding of constructive notice.

In so holding, the Court finds inapposite two cases in which courts entirely discounted surveillance footage, on the ground that it could support "equally speculative" competing inferences regarding the length of time that a hazardous substance had been on a store's floor.

---

[6] The instruction to be given to a jury that found the video inconclusive would present a question that the Court will take up with counsel before trial.  There is a substantial argument that, in the absence of other evidence of constructive notice, a jury that found the video inconclusive would be required to find a lack of constructive notice to Target, and thus to return a defense verdict.

*Clark v. Target Corp.*, No. 19 Civ. 5865 (NRB), 2020 WL 2115348, at *5 (S.D.N.Y. May 4, 2020); *Leandro v. Wal-Mart Supercenter Store #2104*, No. 19 Civ. 2108 (JCM), 2021 WL 2742622, at *10–11 (S.D.N.Y. June 30, 2021).

In *Clark*, Target had argued that the surveillance footage, which showed a store patron walking through the area of accident about a minute and a half before the incident at issue, supported the inference that the hazardous condition could have existed for a maximum of 95 seconds. 2020 WL 2115348, at *5. The court found this inference speculative because other factors might have prevented the first patron from slipping while the plaintiff had slipped— including different footwear or degrees of caution. *Id.* At the same time, the plaintiff argued that because 17 minutes before plaintiff fell, another patron had slipped and fallen in the same area, it was reasonable to infer that the hazardous condition had existed for at least 17 minutes before the incident. *Id.* The court found that inference speculative, too, because the plaintiff might have slipped on different water "tracked into the store by the individuals who immediately preceded her." *Id.* Finding either inference the product of speculation, the Court, with no other reliable evidence offered, entered summary judgment for the defense on the element of constructive notice. Here, however, the issue turns on a jury's construction of surveillance footage which the Court is unprepared to categorically find inconclusive. Here, as noted, were a jury to find the video reliably to show that the tray had not been placed atop the wicker basket in the 38 minutes before the accident, it could find liability. This case is instead covered by the principle that, where evidence cannot be resolved non-speculatively in either side's favor with respect to constructive notice for premises liability, the question should be sent to a jury. *See Urrutia v. Target Corp.*, 681 F. App'x 102, 105 (2d Cir. 2017) (reversing grant of summary judgment where some evidence suggested that the hazard was "not noticeable," but other evidence

supported finding that the hazard was "sufficiently visible for an employee to notice and remedy").

*Leandro* is likewise distinguishable. That case involved a tiny hazard that consisted of either spilled liquid or a one-inch piece of fruit. 2021 WL 2742622, at \*10–11. The court found that, although the video footage did not reflect an object dropping to the floor in the 61 minutes before the incident, the camera was so far away as to be unlikely to pick up the drop of a small (one-inch) object. It was thus speculative whether the spill occurred while the surveillance camera was recording but outside of the camera's capacity to capture. *Id.* Here, again, however, although a jury might well find the video inconclusive, the Court's assessment is a jury might find the video intelligible on the key disputed fact of whether anyone placed the tray on top of the wicker basket in the 38 minutes before Cuello's incident. Mot. at 14; Opp. at 10.

Viewing the facts in the light most favorable to non-movant Cuello, the Court finds that a reasonable jury scrutinizing the video footage could conclude that no one placed the tray on top of the wicker basket during the 38 minutes before the incident. On such a finding, a reasonable jury could conclude that the hazard had been there for a "sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it." *Nussbaum*, 603 F. App'x at 12; *see, e.g.*, *Deluna-Cole v. Tonali, Inc.*, 303 A.D.2d 186, 187 (1st Dep't 2003); *Kelsey v. Port Authority of N.Y. and N.J.*, 52 A.D.2d 801, 801 (1st Dep't 1976); *Alexander*, 2002 WL 1492125, at \*3. The Court thus denies Target's motion for summary judgment on this theory of liability.

### 2.  Did Target Fail to Inspect?

Target contends that the evidence cannot support a finding that it failed to conduct a reasonable inspection of the area in the period preceding Cuello's accident. Mot. at 20–22. The adequacy of an owner's inspection of common areas is ordinarily a question of fact for the jury, *Wynn ex rel Wynn v. T.R.I.P. Redevelopment Assocs.*, 296 A.D.2d 176, 181 (2d Dep't 2002),

16

provided that the plaintiff has adduced competent evidence of the defendant's failure. *Wilson*, 2018 WL 4473342, at *8.[7] Here, Cuello, drawing on her analysis of the pre-accident video, has adduced such evidence.

In assessing the sufficiency of the evidence of the lack of a reasonable inspection, courts have considered the quality and timing of the inspection—and whether an inspection was conducted at all. *See Cruz v. Target Corp.*, No. 14 Civ 2728 (RER), 2016 WL 3102018, at *2 (E.D.N.Y. June 2, 2016) (jury could find defendant's vague description of looking down the aisles every 10 to 15 minutes "to see if there were 'any issues'" inadequate to satisfy duty to inspect); *Tuthill*, 270 F. Supp. 2d at 400–01 (jury could find unreasonable defendant's procedures for snow and ice inspections); *Meyer*, 403 N.Y.S.2d at 424 (finding defendant's "purported ignorance of the condition, far from being a defense to the action, constituted a breach of its duty of care").

Here, Target, in defending its inspection as reasonable, notes that its standard procedures called for a start-of-shift inspection of the aisle some 49 minutes before the incident, that is, some 11 minutes before the start of the video footage.[8] Mot. at 16. Target argues that it should

---

[7] As noted above, courts have differed on whether a failure to inspect "is a means for establishing constructive notice or a separate obligation that displaces the need for notice when imposing premises liability." *See Bogery*, 2018 WL 4265901, at *7; *see, e.g., Taylor v. Manheim Remarketing, Inc.*, 752 F. App'x 94, 95 (2d Cir. 2019) (summary order) ("Under New York law, a court will impute constructive notice to a party if that party failed to conduct reasonable inspections of its property and a reasonable inspection would have revealed the defective condition."); *Tuthill*, 270 F. Supp. 2d at 400 ("[T]he issue of actual or constructive notice is irrelevant where defendant had a duty to conduct reasonable inspections of the premises and failed to do so."); *see also Meyer v. State*, 403 N.Y.S.2d 420, 42 (N.Y. Ct. Cl. 1978) ("Where there is a failure to inspect, constructive notice need not be proved."). The Court does not have occasion to resolve this doctrinal difference here.

[8] Target's closing team's shift began at 7 p.m. JSF ¶ 3. Per policy, the first thing the closing team is to do at the beginning of their shift is "to perform an initial search of their department." *Id.* ¶ 20; *see* Mot. at 6.

be presumed to have followed those procedures. And it notes cases in which summary judgment has been granted to a defendant where an inspection of the area where an accident occurred had been conducted within an hour of the accident. Mot. at 16 (citing *Collins v. Walmart Stores E., LP*, No. 19 Civ. 1691 (ST), 2022 WL 2305342, at *18 (E.D.N.Y. Jun. 27, 2022); *Shimunov v. Home Depot U.S.A., Inc.*, No. 11 Civ. 5136 (KAM), 2014 WL 1311561, at *2–3 (E.D.N.Y. Mar. 28, 2014); *Stephanides v. BJ's Wholesale Club Inc.*, No. 12 Civ. 0083 (CLP), 2013 WL 1694901 (E.D.N.Y. Apr. 18, 2013)). It also notes cases granting summary judgment for the defense in the absence of definitive proof of when the area had last been inspected. *See* Mot. at 16–17 (citing *Thomason v. Target Corp.*, No. 20 Civ. 8982 (JPC), 2022 WL 1137165 (S.D.N.Y. Apr. 18, 2022); Reply at 2–3 (citing *Thomason*, 2022 WL 1137165; *Lacey v. Target Corp.*, No. 13 Civ. 4098 (RML), 2015 WL 2254968 (May 13, 2015); *Decker*, 2017 WL 568761; *Painchault v. Target Corp.*, No. Civ. 1831 (NGG) (RML), 2011 WL 4344150 (E.D.N.Y. Sept. 14, 2011)).

This authority does not carry the day, given the evidence in this case. To begin, there is video evidence here that captures the aisle for the 38 minutes preceding the incident. Based on that footage, a jury could conclusively find the absence of any inspection whatsoever of the aisle wall for "foreign" merchandise during (at least) those 38 minutes. With one exception, the footage is devoid of any activity that looks like an inspection. The parties debate how to characterize the actions of a Target employee seen in the aisle between the 7:50 and 9:35 marks. Cuello contends that the employee does not appear to be inspecting anything, Opp. at 10; Target contends that the employee can be construed to be scanning misplaced items and placing them back in their proper place, in a process known as "reshop," which—Target is unclear on the point—may, or may not, be tantamount to a search for "foreign." Mot. at 7, 15. But Target has not adduced testimony from that employee as to what he or she was doing. And supervisor

Gonzalez testified, after watching the video, that he could not tell whether any Target employee even passed through the pertinent area during that time frame, Dkt. 29-5 at 87–91, let alone inspected the aisle for latent hazards.[9]  Target also notes that Gonzalez wrote, in the LOD Investigation Report he prepared the night of the incident, that Sanchez-Perez and another team member had been in the "area within 30 minutes prior to the incident." Dkt. 29-6.  But the video categorically does not depict *two* Target employees in the area during that time window.  In any event, Gonzalez's report is inadmissible for want of a factual foundation, as Gonzalez testified that he had not spoken with Sanchez-Perez or the other team member about the incident, and that he merely assumed that a Target employee had visited the aisle area in the 30 minutes before Cuello's accident.  Gonzalez Depo. Tr. at 48, 72, 108–11.  Moreover, Target appears to concede that there was no inspection during at least the 11 minutes preceding the start of the video— dating to the minute when, it states, an inspection was required by its policy mandating an inspection upon the start of a new shift.  *See supra* note 8.  A reasonable jury could find the absence of an inspection during at least the 49 minutes preceding Cuello's accident to have been unreasonable.  Under the law, it is for a jury to decide, based on the assembled circumstances, whether an inspection gap of such or greater length[10] was reasonable, and whether the quality of

---

[9] It is of no moment that at around the 39-minute mark of the video, Gonzalez identified Sanchez-Perez looking for foreigns, as such occurred after Cuello's accident.  "[T]he legally meaningful time to notice a defective condition is *before* an accident, not after." *Leandro*, 2021 WL 2742622, at *9 (quoting *Henry v. Target Corp.*, 16 Civ. 8416 (JPO), 2018 WL 3559084, at *5 (S.D.N.Y. July 24, 2018) (emphasis in original)).

[10] To the extent Target posits that, based on its policy, an inspection occurred 49 minutes before the accident, Target has not cited case authority requiring a jury to credit such evidence.  A jury that did not find Target to have inspected the aisle at that point would have all the more reason to find the absence of an inspection to be sufficiently prolonged as to be unreasonable.

Target's inspection was adequate. *See, e.g.*, *Cruz*, 2016 WL 3102018, at *1–2; *Tuthill*, 270 F. Supp. 2d at 400–01.

Target, finally, notes that the burden is on the plaintiff to raise a triable issue of fact as to reasonableness of an inspection, and that it is not obliged to present evidence affirmatively establishing that conducted a reasonable inspection. Mot. at 16–17; Reply Br. at 2–5 (citing *Collins*, 2022 WL 2305342, at *4). For the reasons stated, Cuello has carried that burden here, in that the video evidence alone can be reasonably read to support the unreasonably long absence of an inspection of the aisle. *See Cruz*, 2016 WL 3102018, at *1; *Wynn ex rel Wynn*, 296 A.D.2d at 181. Target will be at liberty at trial to adduce contrary admissible evidence.

## CONCLUSION

For the foregoing reasons, the Court denies Target's motion for summary judgment. The Clerk of Court is respectfully directed to terminate the motion pending at docket 28.

This case will now proceed to trial. The Court directs the parties promptly to confer, and, within three weeks of this decision, to submit a joint pretrial order consistent with the Court's Individual Rules governing jury trials. Any motions *in limine* are due on the same date as the joint pretrial order; opposition briefs are due one week later.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 26, 2023
       New York, New York